UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-0129-CVE |
| | ) | |
| WILBER DOMINGUEZ, | ) | |
| previously named as | ) | |
| Wilber Cruz Dominguez, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is the Motion to Suppress Defendant's Statement [sic] (Dkt. # 16). Defendant is charged with possession of methamphetamine with intent to distribute (count one) and possession of cocaine with intent to distribute (count two). Dkt. # 6. Defendant asks the Court to suppress statements he made to police after he allegedly invoked his right to remain silent. The government responds that any statements made by defendant after he received a Miranda warning were made spontaneously and were not the result of custodial interrogation, and that defendant's motion to suppress should be denied. The Court held an evidentiary hearing on October 12, 2011, and Tulsa Police Department (TPD) Corporal Michael Griffin was the sole witness.

On June 17, 2011, Griffin requested and was issued search warrants for a 2002 Saturn Vue automobile and three houses located in Tulsa, Oklahoma. Griffin testified that a confidential informant had made three controlled buys from defendant, and that police officers had also conducted surveillance of defendant and the three houses. At 6:04 p.m. on June 23, 2011, TPD Officer Corbin Collins, Officer Jeff Eddings, and Sergeant Glenn Uhren initiated surveillance of the 2002 Saturn Vue as it left a house located at 1549 North New Haven Avenue in Tulsa. TPD

Officers Josh Dupler and James Bohanon stopped the vehicle at 6:07 p.m. near 4800 East Oklahoma Street. TPD Officer Tim Wilson and Griffin arrived a few minutes later and served the defendant with search warrants for the vehicle and two of the houses.[1] Defendant waited in the passenger seat of Bohanon's patrol car while Dupler, Bohanon, and Wilson searched the Saturn Vue. Griffin remained with defendant at the patrol car during the search of the Saturn Vue. Other police officers participating in the operation were instructed to execute search warrants at 1525 North Florence Place and 2118 North Columbia Avenue in Tulsa, Oklahoma, and those searches went ahead simultaneously with the search of the Saturn Vue.

Griffin read defendant his Miranda rights and defendant stated that he understood his rights. Griffin asked defendant if he wanted to speak to Griffin, and defendant nodded his head. Griffin asked defendant to make a verbal response and defendant asked Griffin to repeat his question. Griffin again asked defendant if he would voluntarily speak to Griffin, and defendant stated that he did not wish to talk to Griffin. Griffin asked defendant if the key to North New Haven house was on the key ring for the Saturn Vue, because he wanted to avoid damaging defendant's property by knocking down the door. Defendant stated that the key to house was on his key ring for the Saturn Vue. Griffin also asked defendant if anyone else was present at the house on North New Haven Avenue, because Griffin was concerned for the safety of officers who would be searching the house. Defendant stated that no one was in the house. Defendant asked Griffin why he was being served

---

[1] Following surveillance of defendant, Griffin believed that defendant resided at the house located at 1549 North New Haven Avenue, and he had sufficient evidence to tie defendant to another house at 1525 North Florence Place in Tulsa, Oklahoma. Defendant was not served with a search warrant for 2118 North Columbia Avenue (or Place) in Tulsa, Oklahoma. Griffin could not recall if this house was located on North Columbia Avenue or North Columbia Place.

with a warrant for 1525 North Florence Avenue, because he did not live at that address. Griffin responded that they had connected defendant to that address, and defendant stated that he kept his Ford Mustang at the house on North Florence Avenue. During the search of the Saturn Vue, police recovered 14.14 grams of methamphetamine, 13.92 grams of cocaine, and two plastic bags each containing a white powdery substance. Police searched defendant and found $765 in United States currency and a paycheck made payable to Wilber Caliz.

Griffin drove the Saturn Vue to 1549 North New Haven Avenue and defendant rode in Officer Bohanon's patrol car. Defendant waited in the patrol car with Griffin while other police officers attempted to gain entry to the house. Officer Eddings knocked on the front door and announced that TPD officers were present to serve a search warrant. No one answered the door and Officer Eddings repeated his knock and announce. While the officers were waiting to enter the residence, defendant spontaneously stated to Griffin that the only cocaine and methamphetamine he possessed was inside the Saturn Vue, and he questioned why officers were knocking on the door when they already had the key. Again, no one answered the door, and Sergeant Uhren used the key identified by defendant as the house key to open the door. At 6:40 p.m., Sergeant Uhren notified the dispatcher that the residence was clear and that no other persons were in the residence.

After the residence was secure, Griffin took defendant into the house and defendant remained seated during the search. Griffin subsequently advised defendant that he would be placed under arrest and he asked defendant questions in order to complete an arrest and booking sheet. Defendant initially stated that he did not have a Social Security number, but he later provided a Social Security number to Griffin. He also told Griffin that he was born in Mexico. Defendant made these statements in response to Griffin's questions for the purpose of completing an arrest and booking

3

sheet. Defendant sponteously told Griffin that he had obtained lawful employment within the last few weeks, but he had to sell cocaine and methamphetamine because he did not have the same opportunities as "white people." During the search of the house, police found additional quantities of cocaine and methamphetamine and an unspecified amount of United States currency.

In <u>Miranda v. United States</u>, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id</u>. at 444. Under this rule, the court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect. <u>United States v. Patane</u>, 542 U.S. 630 (2004); <u>United States v. McCurdy</u>, 40 F.3d 1111, 1117 (10th Cir. 1994). Once a <u>Miranda</u> warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence. <u>Michigan v. Mosley</u>, 423 U.S. 96, 101 (1975). However, a suspect impliedly waives his right to remain silent if he receives a <u>Miranda</u> warning, understands the <u>Miranda</u> warning, and makes an uncoerced statement to police. <u>Berghuis v. Thomkins</u>, 130 S. Ct. 2250, 2262 (2010). The fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a <u>Miranda</u> warning. <u>United States v. Pettigrew</u>, 468 F.3d 626, 636 (10th Cir. 2006). The <u>Miranda</u> exclusionary rule requires only that the court exclude any "unwarned statement" itself. <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985).

There is no dispute that defendant received a <u>Miranda</u> warning, but defendant claims that he invoked his right to remain silent and police continued to interrogate him. Corporal Griffin testified that defendant made certain statements spontaneously and other statements were made in response

4

to routine arrest and booking questions. Miranda does not prohibit a suspect from voluntarily speaking to police and any statement volunteered by a suspect and not in response to a question by a police officer is admissible. Pettigrew, 468 F.3d at 633-34; United States v. Torres-Guevara, 147 F.3d 1261, 1266 (10th Cir. 1998). The government bears the burden to prove that a defendant's statements were voluntary. United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). Defendant's argument appears to be that the Court should infer from the incriminating nature of his statements concerning his possession of illegal drugs that he was subject to interrogation, because there is no "plausible explanation" as to why defendant would volunteer this information. Dkt. # 16, at 3. Miranda does not prohibit a suspect from volunteering incriminating statements, even if this is not in the suspect's best interest, and there is no legal basis to presume that a suspect who voluntarily makes an incriminating statement was subject to improper custodial interrogation. However, the Court will consider defendant's arguments that certain statements were made in response to actual or implied interrogation by Griffin.

The Court finds that Corporal Griffin is credible and that the government has met its burden to show that defendant voluntarily and/or spontaneously made certain statements to Griffin and that the statements were not the result of improper custodial interrogation. Griffin gave defendant a Miranda warning and defendant stated that he understood his Miranda rights. Griffin asked defendant if he would waive his right to remain silent, and defendant nodded his instead. Instead of treating defendant's nod as an affirmative waiver, Griffin asked defendant to make a verbal response and he repeated his question at defendant's request. Defendant stated that he did not want to speak to Griffin, and Griffin refrained from questioning defendant about the presence of illegal drugs in the Saturn Vue or any of the three houses. While Griffin and defendant waited in

5

Bohanon's patrol car during or after the search of the Saturn Vue, Griffin asked defendant if one of the keys on the key ring opened the house on North New Haven Avenue and if anyone was present in the house. Griffin testified that he asked these questions out of a concern for officer safety and to avoid unnecessary property damage to defendant's home. It was reasonable Griffin to inquire about the presence of other persons in the home, because other occupants of the home could have posed a danger to police officers. The Supreme Court has recognized a public safety exception to Miranda, and the Tenth Circuit has clarified that "questions necessary to secure [officer] safety" are covered by this exception. New York v. Quarles, 467 U.S. 649 (1984); United States v. Lackey, 334 F.3d 1224, 1227-28 (10th Cir. 2003). Although there is no evidence of exigent circumstances, the Court finds that Griffin asked about the presence of other people in the house for the purpose of officer safety and not to elicit an incriminating response, and defendant's response to Griffin's question should not be suppressed. The Court also finds no basis to suppress defendant's identification of the house key on the key ring, because this question was asked by Griffin to obtain a safe entry to the house without damaging defendant's property. Griffin was not attempting to interrogate defendant about any aspect of the suspected criminal activity, and he was seeking to avoid unnecessary damage to defendant's property. This question was not prohibited by defendant's invocation of his right to remain silent.

Defendant spontaneously made certain statements during the search of the Saturn Vue and the North New Haven house, and these statements should not be suppressed. After Griffin served defendant with the warrant for the North Florence Place house, defendant asked why that warrant was served on him, and spontaneously stated that he kept his Ford Mustang at the house. These statements were not the result of any questioning by Griffin, and this brief conversation was initiated

6

by defendant. At the North New Haven house, defendant asked why officers were knocking on the front door if they had a key and he stated that all of his cocaine and methamphetamine was in the Saturn Vue. This conversation was also initiated by defendant and was not the result of custodial interrogation. Finally, defendant stated during the arrest and booking process that he had recently obtained employment and he had to sell drugs because he did not have the same opportunities as "white people." Griffin testified that defendant spontaneously made the statements and the Court has found that Griffin's testimony is credible, and defendant's statements about his employment status and alleged reason for selling drugs should not be suppressed.

Defendant allegedly made certain statements in response to arrest and booking questions, and the government asserts that these statements are not subject to exclusion under Miranda. Defendant acknowledges that Griffin asked him questions to complete booking paperwork, but he argues that these statements should be excluded if they would be incriminating to defendant.[2] Dkt. # 16, at 3. However, he cites no authority for his argument that statements made in response to routine arrest and booking questions should be excluded merely because the answers could potentially incriminate a defendant. The Supreme Court has recognized a "routine booking question" exception to Miranda, and questions asked for the purpose of obtaining "biographical data necessary to complete the booking or pretrial services" are not covered by Miranda. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990). However, if questions that are normally routine are asked for the purpose of eliciting an incriminating response, it is possible that such questioning could be prohibited by Miranda. United States v. Parra, 2 F.3d 1058, 1068 (10th Cir. 1993). Questions about

---

[2] Defendant claims that questions concerning his employment status are incriminating, because the government "will undoubtedly rely on the presence of 'unexplained cash' as a basis for the allegation of 'possession with intent [to distribute].'" Dkt. # 16, a 3.

a person's identity, such as a person's name and address, are not generally likely to elicit an incriminating response and a suspect's responses to such routine questioning is not protected by Miranda. United States v. Medrano, 356 Fed. Appx. 102 (10th Cir. Dec. 7, 2009).[3] Defendant acknowledges that questions about the identity of his employer and his Social Security number[4] are part of the booking inquiry. Dkt. # 16, at 3. These statements are admissible under the booking exception to Miranda, even if defendant believes that the statements are potentially incriminating, unless the evidence shows that Griffin asked these questions to elicit an incriminating response.

Finally, defendant argues that he clearly invoked his Miranda rights and Griffin should have inferred that defendant intended to assert his right to remain silent and his right to counsel.[5] Defendant acknowledges that existing precedent does not require a police officer to infer that a suspect has invoked his right to counsel based only on the invocation of a suspect's right to remain silent. The right to remain silent and the right to counsel are separate. To invoke his right to counsel, a suspect must "unambiguously request counsel" and he must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would

---

[3]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[4]  Defendant initially told Griffin that he did not have a Social Security number, but he later provided a Social Security number to Griffin. Although defendant may have initially provided a false answer to Griffin's question and this may tend to incriminate defendant, the question remains a routine booking question and Miranda does not prevent the admission of defendant's answer to this question merely because his false answer may tend to incriminate him.

[5]  This argument appears to be moot based on the Court's finding that no improper custodial interrogation actually occurred because, regardless of the presence of attorney, defendant was not subject to interrogation within the meaning of Miranda. However, the Court will consider defendant's argument that he impliedly asserted his right to counsel by invoking his right to remain silent.

8

understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459 (1994). Griffin could not have understood defendant's statement that he did not wish to speak to Griffin as a clear and unambiguous invocation of defendant's right to counsel, and the alleged failure to provide defendant an attorney does not require the suppression of any statement.[6]

**IT IS THEREFORE ORDERED** that the Motion to Suppress Defendant's Statement [sic] (Dkt. # 16) is **denied**.

**DATED** this 13th day of October, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Defendant may also be arguing that Griffin engaged in conduct, even if not direct questioning, that was designed to elicit an incriminating response from defendant. See Rhode Island v. Innis, 446 U.S. 291 (1980). However, defendant could not identify any actions by Griffin that were intended to coerce an incriminating statement from defendant and the Court has found no evidence that such conduct occurred.

9